UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

GABRIEL PEREZ and JOSE RODRIGUEZ,

                                          Plaintiffs,

     -against-

THE CITY OF NEW YORK, a municipal entity; NEW YORK POLICE OFFICER MICHAEL HOLLAND (Shield # 14664) in his individual and official capacity and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued individually and in their official capacities,

                                          Defendants.

------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL**

Plaintiffs GABRIEL PEREZ and JOSE RODRIGUEZ ("PLAINTIFFS" or "GABRIEL and JOSE"), by their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint against the defendants named above allege as follows:

**PRELIMINARY STATEMENT**

1. This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries PLAINTIFFS sustained from the unconstitutional conduct of defendants THE CITY OF NEW YORK and New York City Police Department police officers MICHAEL HOLLAND and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc.

2. On August 30, 2014, PLAINTIFFS were at the home of JOSE RODRIGUEZ celebrating his mother's successful battle with cancer when New York City Police Department police officers, without any reasonable suspicion or probable cause to believe that PLAINTIFFS were engaged in illegal activity, broke into JOSE's apartment and accosted GABRIEL and

JOSE.  The police officers detained and searched PLAINTIFFS, physically and verbally assaulted them, arrested them, falsely charged them with baseless criminal offenses, and destructively searched JOSE's apartment.  The charges against JOSE were eventually dismissed, while the charges against GABRIEL are currently still pending.

3. PLAINTIFFS seek (i) compensatory damages for loss of liberty, psychological and emotional distress, and other injuries caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; (iii) costs and attorneys' fees; (iv) and such other and further relief as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of PLAINTIFFS' constitutional and civil rights.

5. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFFS' claims took place.

**JURY DEMAND**

7.     PLAINTIFFS demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

**THE PARTIES**

8.     Plaintiff GABRIEL PEREZ ("PEREZ") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

9.     Plaintiff JOSE RODRIGUEZ ("RODRIGUEZ") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

10.    Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11.    Defendant Police Officer MICHAEL HOLLAND ("HOLLAND") (Shield # 14664) and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. ("DOES"), are NYPD police officers who unlawfully detained, searched, frisked, and arrested PLAINTIFFS without suspicion of any illegal activity, lodged false criminal charges against them, and caused them to be maliciously prosecuted.

12.    At all times relevant herein, defendants HOLLAND and DOES were NYPD Police Officers.

13. Upon information and belief, defendants HOLLAND and DOES are still NYPD Police Officers.

14. At all times relevant herein, defendant police officers HOLLAND and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

15. At all times relevant herein, defendant police officers HOLLAND and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

16. RODRIGUEZ served a Notice of Claim upon the CITY on or about October 29, 2014, within ninety (90) days of the events giving rise to his claims.

17. PEREZ served a Notice of Claim upon the CITY on or about November 25, 2014, within ninety (90) days of the events giving rise to his claims.

18. More than thirty (30) days have elapsed since PLAINTIFFS served their Notices of Claim and the CITY has not offered adjustment or payment thereof.

19. This action is filed within one year and ninety days of the events giving rise to PLAINTIFFS claims.

## STATEMENT OF FACTS

20. GABRIEL PEREZ and JOSE RODRIGUEZ are lifelong residents of the Bronx.

21. JOSE RODRIGUEZ lives with his mother, sister and brother in an apartment complex that is owned and operated by the New York City Housing Authority.

22. On the evening of August 30, 2014, JOSE hosted a get together for family members and friends at his apartment.

23. JOSE had arranged the get together to celebrate the recent news that his mother had successfully beaten cervical cancer.

24. People began to show up at JOSE's apartment at approximately 8:30 p.m.

25. By approximately 9:30 p.m., there were approximately nine people present at JOSE's apartment, which included his brother, his sister and her husband, two of his cousins, GABRIEL, and two of GABRIEL's friends.

26. At that time, JOSE's mother was visiting a friend who lived nearby.

27. The people present at JOSE's get together on the night of August 30, 2014, were socializing and listening to music.

28. The people present at JOSE's get together on the night of August 30, 2014, did not create any excessive or unusually loud sound that would have disturbed the peace, comfort or repose of a reasonable person of normal sensitivities, or that could have injured or endangered the health or safety of a reasonable person of normal sensitivities, or which could have caused injury to plant or animal life, or damage to property or business.

29. At approximately 9:45 p.m., JOSE left the get together at his apartment to go to a store.

30. Shortly thereafter, NYPD police officers knocked on the door of JOSE's apartment.

31. GABRIEL answered the door and asked the police officers if there was a problem.

32. The police officers told GABRIEL that there had been a complaint that people on their floor were being too loud.

33. GABRIEL responded that everything was fine at the apartment.

34. The police officers then left and GABRIEL resumed socializing with the other guests at the apartment.

35. Approximately fifteen minutes later, JOSE returned from the store to his apartment building.

36. As he proceeded through the lobby of his apartment building to the elevator, Jose saw several NYPD police officers, including defendant police officer HOLLAND.

37. JOSE then returned to his apartment and resumed socializing with his guests.

38. After JOSE returned, the people present at the get together at his apartment continued to act in a manner that did not create any excessive or unusually loud sound that would have disturbed the peace, comfort or repose of a reasonable person of normal sensitivities, or that could have injured or endangered the health or safety of a reasonable person of normal sensitivities, or which could have caused injury to plant or animal life, or damage to property or business.

39. Approximately ten minutes after JOSE returned to his apartment, someone started banging on the apartment door.

40. JOSE looked out of the apartment door peep-hole and saw several NYPD police officers.

41. JOSE then opened the door slightly and asked the police officers if there was a problem.

6

42. The police officer closest to the door responded, in sum and substance, "You know what time it is!"

43. JOSE responded by asking the police officer what he meant.

44. The police officer closest to the door then expanded a telescoping baton and raised it above his head as if he was going to strike JOSE.

45. JOSE then retreated backwards from the doorway because he was afraid that the police officer was going to strike him with the baton.

46. Approximately ten police officers, including defendant police officer HOLLAND then rushed into JOSE's apartment.

47. The police officers did not claim to have a warrant to enter JOSE's apartment.

48. Some of the police officers began destructively searching JOSE's apartment, while others yelled at JOSE's guests telling them they should leave the apartment or be arrested.

49. JOSE asked the police officers why they had broken into his apartment and whether or not they had a warrant to break into his apartment.

50. Police officers responded by telling JOSE, in sum and substance, to "Shut up!"

51. Some police officers continued ordering JOSE's guests to leave and escorting them out of the apartment, while other police officers continued to destructively search JOSE's apartment.

52. JOSE's brother and sister protested being forced to leave the apartment because they lived there.

53. The police officers told JOSE's brother and sister that if they remained in the apartment, they would be arrested.

54. JOSE's brother and sister left their apartment and went to get their mother.

55. While some police officers were removing people from the apartment and others were destructively searching the apartment, JOSE protested that what the police were doing to him and his guests was illegal and that they had no right to break into his apartment.

56. Police officers responded by telling JOSE, in sum and substance, to "Shut up!"

57. JOSE continued to protest the police officers' actions.

58. One of the police officers responded to JOSE's protestations by ordering defendant police officer HOLLAND to "lock [JOSE] up."

59. At this point, JOSE and GABRIEL were the only civilians remaining in JOSE's apartment.

60. JOSE responded by telling the police officers that what they were doing was illegal because he had not done anything wrong.

61. The police responded by assaulting JOSE.

62. One police officer grabbed JOSE around his torso and began punching JOSE in the back.

63. Another police officer grabbed JOSE's left arm and began forcing it behind JOSE's back.

64. Defendant police officer HOLLAND grabbed JOSE's right arm and began forcing it behind JOSE's back.

65. JOSE screamed in pain because he suffers from ulnar nerve palsy in his right arm.

66. One of the police officers jammed their foot into the back of JOSE's knee, causing JOSE to fall face downward on the floor.

67. JOSE told the police officers that they were hurting his arm and that he suffers from nerve palsy.

68. One of the police officers responded by jamming his knee into JOSE's back.

69. A police officer forcefully removed the brace JOSE wore on his right arm and handcuffed JOSE.

70. While the police officers were assaulting JOSE, GABRIEL asked the police officers why they were attacking JOSE and treating him so violently.

71. One of the police officers responded by telling GABRIEL to shut up and threatened to hit GABRIEL with his telescoping baton.

72. Another police officer said to "lock [GABRIEL] up!"

73. The police officer who had threatened GABRIEL told him to turn around and put his hands behind his back.

74. GABRIEL complied with the police officers' orders.

75. GABRIEL was then placed in handcuffs.

76. Once GABRIEL and JOSE were placed in handcuffs, they were both subjected to pat-down searches by the police officers.

77. Nothing illegal was found as a result of the pat down searches of GABRIEL and JOSE.

78. GABRIEL and JOSE both complained to police officers that the handcuffs were placed on them too tightly and causing them pain.

79. The police officers responded by telling GABRIEL and JOSE to shut up.

80. GABRIEL and JOSE asked the police officers why they had been placed under arrest.

81. The police officers responded by telling GABRIEL and JOSE to shut up.

82. GABRIEL and JOSE were taken from JOSE's apartment and placed in a police van parked outside JOSE's apartment building.

83. While they waited in the van, JOSE took his cell phone out and began video recording.

84. While GABRIEL and JOSE were waiting in the van and JOSE was video recording, GABRIEL and JOSE complained to police officers that their handcuffs were on too tight and causing them pain.

85. Police officers either ignored GABRIEL's and JOSE's complaint or told them to shut up.

86. While GABRIEL and JOSE were waiting in the van and JOSE was video recording, GABRIEL and JOSE asked the police officers why they had been placed under arrest when they had not done anything wrong.

87. Police officers either ignored GABRIEL's and JOSE's request or told them to shut up.

88. While GABRIEL and JOSE were waiting in the van and JOSE was video recording, JOSE requested medical attention for his right arm as he was experiencing great pain because of how the police officers had violently handled that arm.

89. Police officers either ignored JOSE's request or told him to shut up.

90. While GABRIEL and JOSE were waiting in the van, JOSE eventually stopped using his cell phone to video record and GABRIEL and JOSE watched the footage.

91. While GABRIEL and JOSE were waiting in the van and watching the footage JOSE had just recorded, a police officer noticed what GABRIEL and JOSE were doing and asked why JOSE still had his cell phone.

92. A police officer then confiscated JOSE's cell phone.

93. GABRIEL and JOSE were eventually taken to the NYPD Housing Bureau Police Service Area #7 at 737 Melrose Avenue, Bronx, New York.

94. At NYPD Housing Bureau Police Service Area #7, GABRIEL and JOSE were again subjected to pat-down searches.

95. Nothing illegal was found as a result of the pat down searches of GABRIEL and JOSE at NYPD Housing Bureau Police Service Area #7.

96. GABRIEL and JOSE were then processed and placed in a holding cell.

97. GABRIEL and JOSE continued to ask police officers why they had been arrested.

98. Police officers either ignored GABRIEL's and JOSE's request or told them to shut up.

99. JOSE continued to request medical attention because his right arm was still in great pain.

100. Police officers either ignored JOSE's request or told him to shut up.

101. Eventually, a police officer told JOSE that if he requested medical attention it would cause him to remain in custody a lot longer, and that if he did not request medical attention they would let him leave out the back door once he got to Bronx Central Booking.

102. JOSE did not want to remain in custody any longer than he had to, so he took the police officer's advice and ceased requesting medical attention event though his right arm was still in great pain.

103. After several hours, GABRIEL and JOSE were transported from NYPD Housing Bureau Police Service Area #7 to Bronx Central Booking.

11

104. GABRIEL and JOSE were again subjected to pat-down searches at Bronx Central Booking.

105. Nothing illegal was found as a result of the pat-down searches of GABRIEL and JOSE at Bronx Central Booking.

106. After spending several hours in Bronx Central Booking, GABRIEL and JOSE were brought before a judge for arraignment.

107. GABRIEL was arraigned on the misdemeanor charges of Resisting Arrest and Obstruction of Governmental Administration.

108. JOSE was arraigned on the misdemeanor charges of Resisting Arrest and Attempted Assault in the third degree and the violation charge of Harassment in the second degree.

109. GABRIEL and JOSE were released from custody at Bronx Central Booking on their own recognizance at approximately midnight on Sunday, August 31, 2014.

110. When JOSE returned to his apartment, he found his home in shambles because of the police officers' destructive search of the premises.

111. JOSE's and his family's belongings were scattered all over the place and their couch had been ripped open.

112. Upon information and belief, no evidence of illegal activity was recovered as a result of the police officers' destructive search of JOSE's apartment.

113. The criminal charges against JOSE were eventually dismissed pursuant to New York Criminal Procedure Law 170.55.

114. The criminal charges against GABRIEL are still pending.

115. At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

116. Defendants' conduct caused GABRIEL and JOSE to suffer loss of liberty, physical injury, emotional and psychological pain, embarrassment, humiliation, harm to their reputation, and deprived them of their constitutional rights.

## FIRST CAUSE OF ACTION
## 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights

117. PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

118. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive PLAINTIFFS of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a. freedom from unreasonable search and seizure of their persons and property;

   b. freedom from arrest without probable cause;

   c. freedom from use of excessive force;

   d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFFS were aware and did not consent;

   e. freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the individual defendants;

   f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and

       that ultimately terminated in PLAINTIFFS' favor; and

      g.  freedom from deprivation of liberty without due process of law.

119. In committing the acts and omissions complained of herein, defendants HOLLAND and DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

120. As a direct and proximate result of defendant NYPD police officers HOLLAND's and DOES' deprivation of PLAINTIFFS' constitutional rights, PLAINTIFFS suffered the injuries and damages set forth above.

121. The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

122. PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

123. Defendants' conduct breached the protections guaranteed to PLAINTIFFS by the New York State Constitution including, but not limited to, Article I, §§ 6 and 12, and including the following rights:

    a.  freedom from unreasonable search and seizure of their persons and property;

    b.  freedom from arrest without probable cause;

    c.  freedom from use of excessive force;

    d.  freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFFS were aware and did not consent;

    e.  freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the

individual defendants;

f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

g. freedom from deprivation of liberty without due process of law.

124. The deprivation of PLAINTIFFS' rights under the New York State Constitution resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
### False Imprisonment

125. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

126. Defendant NYPD police officers HOLLAND and DOES, through the foregoing acts, caused PLAINTIFFS to be wrongfully detained without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFFS were aware and to which they did not consent.

127. Defendant NYPD police officers HOLLAND and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
### Malicious Prosecution

128. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

129. Defendant NYPD police officers HOLLAND and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against PLAINTIFFS, which ended in their

favor, without probable cause to believe PLAINTIFFS were guilty of the crimes charged or any crimes.

130. Defendant NYPD police officers HOLLAND and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### Assault and Battery

131. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

132. Defendant NYPD police officers HOLLAND and DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFFS causing them injury.

133. Defendant NYPD police officers HOLLAND and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFFS' rights, and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

134. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

135. Defendant NYPD police officers HOLLAND and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused PLAINTIFFS to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

136. Defendant NYPD police officers HOLLAND and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
*Respondeat Superior*

137. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

138. At all relevant times, defendant NYPD police officers HOLLAND and DOES were employees of the City and were acting within the scope of their employment.

139. The CITY is therefore vicariously liable under the common law doctrine of *respondeat superior* for the actions of defendant NYPD police officers HOLLAND and DOES set forth herein.

## **DEMAND FOR RELIEF**

**WHEREFORE**, PLAINTIFFS demand the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendant NYPD police officers HOLLAND and DOES to the extent allowable by law;

(c) attorneys' fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, New York           BELDOCK LEVINE & HOFFMAN LLP
       November 30, 2015            99 Park Avenue, Suite 2600
                                    New York, New York 10016
                                    (212) 490-0400

                                      /s/Marc A. Cannan
                                    Marc A. Cannan (MC0513)
                                    *Attorneys for Plaintiffs Gabriel Perez and Jose Rodriguez*